**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KRISTINE KING, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT |
| HUNTER WARFIELD, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

NOW COMES Plaintiff, KRISTINE KING, by and through her attorneys, SULAIMAN

LAW GROUP, LTD., complaining of Defendant, HUNTER WARFIELD, INC., as follows:

## NATURE OF THE ACTION

1.    This is an action brought by a consumer seeking redress for violation(s) of the Fair Debt

Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA") and the Telephone

Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA")

## JURISDICTION AND VENUE

2.    Subject matter jurisdiction exists over the FDCPA claim(s) under 15 U.S.C. § 1692k(d)

and 28 U.S.C. §§ 1331 and 1337.

3.    Subject matter jurisdiction exists over the TCPA claim(s) under 28 U.S.C. §§ 1331 and

1337.

4.    Venue is proper under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to

the claims took place in the Northern District of Illinois.

## PARTIES

5.    KRISTINE KING ("King") is a natural person, over 18-years-of-age, who at all times relevant resided at the property commonly known as 46 Big Chief Drive, Bourbonnais, Illinois 60914.

6.    King is a "consumer" as defined by 15 U.S.C. § 1692a(3).

7.    HUNTER WARFIELD, INC. ("Hunter Warfield"), provides debt collection and asset investigation services. It specializes in multi-housing, commercial, funeral care, and educational markets, as well as serves educational-student housing and student loans, military housing, utility billing, building and medical supply, and auction bid defaults. The company was founded in 1983 and is based in Tampa, Florida.

8.    Hunter Warfield is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9.    Hunter Warfield uses instrumentalities of interstate commerce and the mail in its business − the principal purpose of which is the collection of debt owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

10.    In September, 2017, Hunter Warfield initiated a relentless telephone harassment campaign in an effort to collect $2,603.00 allegedly owed to The Addison of Naperville.

11.    In late-September, 2017, King answered and was received by a pause, click, and dead air before being connected to a representative.

12.    Specifically, there was a clear pause between the time King said "hello," and the time that a representative introduced them self.

13.    King advised the Hunter Warfield representative she did not owe The Addison of Naperville, and demanded that they stop calling.

14.     King's demand that Hunter Warfield cease calls to her cellular telephone fell on deaf ears and Hunter Warfield continued to place collection calls to King's cellular telephone.

15.     In total, Hunter Warfield placed no less than 28 collection calls to King's cellular telephone after she demanded that the calls cease, including, but not limited to on:

| | |
|---|---|
| September 28, 2017 | December 21, 2017 |
| September 29, 2017 | December 29, 2017 |
| September 30, 2017 | November 17, 2017 |
| October 9, 2017 | December 20, 2017 |
| October 11, 2017 | December 21, 2017 |
| October 14, 2017 | December 29, 2017 |
| October 20, 2017 | January 5, 2018 |
| October 20, 2017 | January 31, 2018 |
| October 30, 2017 | January 31, 2018 |
| November 3, 2017 | February 6, 2018 |
| November 6, 2017 | February 9, 2018 |
| November 13, 2017 | February 12, 2018 |
| November 17, 2017 | February 19, 2018 |
| December 20, 2017 | February 19, 2018 |

16.     Hunter Warfield placed calls to King's cellular telephones from, *inter alia*: (813) 283-4002, (844) 440-2806, and (844) 440-2807.

17.     Upon information and belief, Hunter Warfield placed the collection calls to King's cellular telephone using a predictive dialer[1].

18.     A predictive dialer is an automated telephone dialing system that is commonly used in the debt collection industry to collect defaulted consumer debt.

19.     At all times relevant, King was the sole operator, possessor, and subscriber of the cellular telephone number ending in 3492.

---

[1] A predictive dialer is an outbound calling system that automatically dials from a list of telephone numbers. Like other types of autodialers (also called robodialers), predictive dialers call numbers automatically and can help agents screen for busy signals, voicemails, no-answers and disconnected numbers.

20.    At all times relevant, King was financially responsible for her cellular telephone equipment and services.

From November On or about November 6, 2017, Hunter Warfield initiated a relentless telephone harassment campaign against King's brother in an effort to collect debt allegedly owed by King.

21.    From November 6, 2017 to February 19, 2018, Hunter Warfield called King's brother weekly in connection with King's alleged debt owed to The Addison of Naperville.

22.    On multiple and numerous occasions, King's brother answered these calls, and requested they stop calling.

## DAMAGES

23.    Hunter Warfield's collection calls have severely disrupted King's everyday life and overall well-being.

24.    Hunter Warfield's collection calls have resulted in intrusion and occupation of King's cellular services, thus impeding receipt of other calls.

25.    Hunter Warfield's collection calls have resulted in unnecessary depletion of King's cellular battery requiring him to incur electricity charges to recharge her cellular telephone.

26.    Hunter Warfield's telephone harassment campaign and illegal collection activities have caused King actual harm, including but not limited to, invasion of privacy, nuisance, loss of subscribed minutes, intrusion upon and occupation of King's cellular telephone capacity, wasting King's time, the increased risk of personal injury resulting from the distraction caused by the phone calls, decreased work productivity, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, anxiety, loss of concentration, diminished value and utility of telephone equipment and telephone

subscription services, the loss of battery charge, and the per-kilowatt electricity costs required to recharge her cellular telephone as a result of increased usage of her telephone services.

27.     Concerned about the violations of her rights and invasion of her privacy, King sought counsel to file this action to compel Hunter Warfield to cease its unlawful conduct.

## CLAIMS FOR RELIEF

## COUNT I:
## Fair Debt Collection Practices Act (15 U.S.C. §§ 1692 *et seq*.)

28.     All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

29.     The $2,603.00 allegedly owed to The Addison of Naperville is a "debt" as defined by 15 U.S.C. § 1692a(5).

30.     Hunter Warfield is attempting to collect a debt used for "personal purpose" as defined by 15 U.S.C. § 1692a(5).

## Violation(s) of 15 U.S.C. § 1692b(3) and c(b)

31.     Hunter Warfield's calls to King's brother are "communications" as defined by 15 U.S.C. § 1692a(2).

32.     Section 1692b(3) provides that any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer *shall not communicate with any such person more than once* unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information.

33.     Section 1692c(b) prohibits debt collectors from communicating with parties other than the consumer.

34.     Hunter Warfield violated 15 U.S.C. §1692b(3) by contacting King's brother more than once to obtain location information.

35.     Hunter Warfield violated 15 U.S.C. §1692c(b) communicating with King's brother no less than 25 times without King's consent in connection with the collection of King's debt.

**Violation(s) of 15 U.S.C. §§ 1692d, and d(5)**

36.     Section 1692d prohibits a debt collector from engaging in conduct the natural consequence of which is to harass, oppress, or abuse in connection with the collection of a debt.

37.     Section 1692d(5) prohibits a debt collector from causing a telephone to ring continuously with the intent to annoy, abuse, or harass.

38.     Hunter Warfield violated 15 U.S.C. §§1692d, and d(5) by making no less than 28 collection calls to King's cellular telephone despite King's demand(s) that they stop.

39.     King may enforce the provisions of 15 U.S.C. §§ 1692b(3), c(b), d, and d(5) pursuant to section k of the Fair Debt Collection Practices Act (15 U.S.C. § 1692k) which provides "any debt collector who fails to comply with any provision of [the Fair Debt Collection Practices Act] with respect to any person is liable to such person in an amount equal to the sum of -

(1)     any actual damage sustained by such person as a result of such failure;

(2)

        (A)     in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.00; or

(3)      in the case of any successful action to enforce the foregoing liability, the costs of the action, together with reasonable attorney's fees as determined by the court.

WHEREFORE, King requests the following relief:

a.      find that Hunter Warfield violated 15 U.S.C. §§ 1692b(3), c(b), d, and d(5);

b.      award actual, and statutory damages, and costs of this action including expenses together with attorneys' fees as determined by this Court; and

c.      grant any other relief deemed appropriate and equitable.

**COUNT II:**
**Telephone Consumer Protection Act (47 U.S.C. § 227 *et seq*.)**

40.      All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

41.      Hunter Warfield placed or caused to be placed non-emergency calls, including but not limited to the aforementioned collection calls, to King's cellular telephone number ending in 3492 utilizing an automatic telephone dialing system ("ATDS") without King's consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

42.      In a 2003 declaratory ruling the Federal Communications Commission ("FCC") concluded that equipment which has the capacity to "store or produce numbers and dial those numbers at random, in sequential order, from a database of numbers" qualifies as an ATDS under the statute.  18 F.C.C.R. 14014, 14091-93 (2003).

43.      In 2012, the FCC stated that a predictive dialer included "any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists."  27 F.C.C.R. at 15392 n. 5 (2012).

7

44. In its Order, the FCC "reiterate[d] that predictive dialers, as previously described by the commission, satisfy the TCPA's definition of an 'autodialer.'" *Id.*

45. Upon information and belief, based on the lack of prompt human response during the collection calls King answered, Hunter Warfield employed a predictive dialer to place collection calls to King's cellular telephone number ending in 3492.

46. Upon information and belief, the predictive dialing system employed by Hunter Warfield transfers the call to a live representative once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

47. Hunter Warfield violated the TCPA by placing no less than 28 calls to King's cellular telephone number ending in 3492 from September 28, 2017 to present-day utilizing an ATDS without King's consent.

48. As pled above, King was severely harmed by Hunter Warfield's collection calls to her cellular telephone.

49. Upon information and belief, Hunter Warfield has no system in place to document and archive whether it has consent to continue to contact consumers on their cellular telephones.

50. Upon information and belief, Hunter Warfield knew its collection practices were in violation of the TCPA, yet continued to employ them to increase profits at King's expense.

51. Hunter Warfield acted through its agents, employees, and/or representatives at all times relevant.

52. As a result of Hunter Warfield's violations of 47 U.S.C. § 227 *et seq.*, King is entitled to receive no less than $500.00 in statutory damages, for each and every violation.

53.     As a result of Hunter Warfield's *knowing and willful violations* of 47 U.S.C. § 227 *et seq*.,

King is entitled to receive no less than $1,500.00 in statutory damages, for each and every

violation.

WHEREFORE, King requests the following relief:

a.      find that Hunter Warfield violated 47 U.S.C. § 227 *et seq*.;

b.      enjoin Hunter Warfield from placing any further calls to King's cellular telephone

number ending in 3492 in the future;

c.      award statutory damages of at least $500.00, and treble damages of $1,500.00, for

each and every violation; and

d.      grant any other relief deemed appropriate and equitable.

**Plaintiff demands trial by jury.**

March 20, 2018                                          Respectfully submitted,

                                                        */s/ Joseph Scott Davidson*

                                                        Joseph Scott Davidson
                                                        Mohammed Omar Badwan
                                                        **SULAIMAN LAW GROUP, LTD.**
                                                        2500 South Highland Avenue
                                                        Suite 200
                                                        Lombard, Illinois 60148
                                                        +1 630-575-8181
                                                        jdavidson@sulaimanlaw.com
                                                        mbadwan@sulaimanlaw.com

                                                        *Counsel for Kristine King*